UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

GALE MARVIN BEEMAN,

                Plaintiff,                Case No. 1:16-cv-27

v.                                     Honorable Gordon J. Quist

DANIEL HEYNS, et al.,

                Defendants.

_____/

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Daniel Heyns, (unknown) Deputy Director, Michael W. Curley, Richard Russell, (unknown) MDOC employee (identified only as the person who placed certain information regarding Plaintiff on the Offender Tracking Information System), Cindy Curtin, (unknown) Sharp, T. Bassett, Sgt. (unknown) Mackay, (unknown) Majerczyk, (unknown) Marshall, the Michigan Legislature and (unknown) legal writer/law librarian. The Court will serve the

complaint against Defendants T. Ball, (unknown) Thomas, and (unknown) Miniard, with respect to the retaliation claim only, Defendant (unknown) Bengelink, with respect to the retaliation claim and the claim for failing to seal Plaintiff's legal mail in Plaintiff's presence, and Dr. (unknown) Davenport, with respect to the claim that Defendant Davenport cancelled Plaintiff's "psych meds" in August of 2013.

## Discussion

### I.    Factual allegations

Plaintiff Gale Marvin Beeman is incarcerated with the Michigan Department of Corrections (MDOC) and is presently housed at the Oaks Correctional Facility in Manistee, Michigan.  He sues the Michigan Legislature, MDOC Director Daniel Heyns, an unknown MDOC Correctional Facilities Administrator with the title of Deputy Director, MDOC Regional Prison Administrator Michael W. Curley, MDOC Manager of the Office of Legal Affairs Richard Russell, and an unknown MDOC employee identified only as the person who placed certain information regarding Plaintiff on the Offender Tracking Information System (OTIS) that allegedly created a substantial risk of harm to Plaintiff's personal safety.  Plaintiff also sues present and former Oaks Correctional Facility personnel, former Warden Cindy Curtin, Deputy Warden T. Ball, Assistant Deputy Warden (unknown) Sharp, Resident Unit Manager (unknown) Thomas, Resident Unit Manager (unknown) Miniard, former prisoner counselor (unknown) Bengelink, former sergeant (unknown) Mackay, Grievance Coordinator T. Bassett, psychiatrist Dr. (unknown) Davenport, Psych Unit Chief (unknown) Majerczyk, Psych (unknown) Marshall, and (unknown) legal writer/law librarian.

Plaintiff's complaint spans 62 pages.  He attaches hundreds of pages of exhibits to support his allegations. Plaintiff raises a panoply of constitutional claims; however, at the heart of

his complaint lie claims that certain of the defendants exposed him to a substantial risk of serious harm from two separate sources.

First, Plaintiff contends he was exposed to a significant risk of harm from the MDOC's OTIS posting regarding Plaintiff. That posting disclosed Plaintiff had scars from an attack by a particular prison gang. (ECF No. 1, PageID.68.) According to Plaintiff, the posting made him a target by effectively branding him as an enemy of that prison gang. Second, Plaintiff contends he was exposed to a significant risk of harm when one or more of the defendants failed to credit his reports of threats of violence made against Plaintiff. The threats came from "cronies" of a prisoner, Whitney, against whom Plaintiff had provided testimony while incarcerated at a different prison.[1]

Both risks came to a head at the same time: August of 2013. On August 10, 2013, while Plaintiff was in "Secured Housing" at the facility, Plaintiff filed a Request for Protection/Investigation Report (ECF No. 1-1, PageID.64-65) that prisoner Turner, prisoner Triplett, and another prisoner (Whitney's "cronies") threatened to attack Plaintiff during chow line. For his own protection, Plaintiff was moved to administrative segregation. Four days later Plaintiff left the prison on a writ. Plaintiff was out on the writ when his attorney informed him about the MDOC OTIS posting. Following Plaintiff's return to the prison, he brought the matter to Defendant Miniard's attention. Plaintiff alleges that Defendant Miniard refused to remove the language regarding the prison gang or "to even check on it." (ECF No. 1, PageID.7.)

On August 16, the Security Classification Committee (SCC) decided that Plaintiff's complaints regarding the prisoner threats were not legitimate and, further, that Plaintiff was attempting to manipulate the system to obtain a transfer. (ECF No. 1-1, PageID.64-65.) The decision was signed by Defendant Miniard and Defendant Ball. Accordingly, Plaintiff was ordered

---

[1]It is not clear from Plaintiff's allegations whether the animus of Whitney and his cronies was the result of Plaintiff's prior testimony alone or Plaintiff's prior testimony **and** the OTIS information.

back to his normal unit.  Plaintiff refused and was written up for a misconduct: disobeying a direct order.  Plaintiff remained in administrative segregation.

Plaintiff filed a grievance with respect to the OTIS information (Grievance Identifier ECF 2013 08 2140 03F, ECF No. 1-1, PageID.69) on August 17, 2013.  The grievance complained specifically of Defendant Miniard's failure to remove the OTIS information or to talk to Plaintiff about it.  The grievance was resolved at Step I.  The official response to the grievance, signed by the respondent on August 23, was positive: "OTIS has been corrected and referenced info deleted from public domain."  *Id.*  Plaintiff has subsequently acknowledged that, with respect to his current (2013) problems, "[n]o actual harm has come from this as [he] sought protection before anybody could do anything . . . ."[2]  (ECF No. 1-6, PageID.354.)

Plaintiff filed another grievance on August 18, 2013 (ECF 2013 08 2103 03B, ECF NO. 1-1, PageID.70) complaining about the SCC's determination that his reports of threats were not legitimate and that he was trying to manipulate a transfer.  That grievance was denied through all levels and the content of the SCC's determination continued to affect Plaintiff in the days that followed.

The Hearing Officer for Plaintiff's "disobeying a direct order" misconduct ticket reasoned that Plaintiff's failure to obey the order may have been justified.  (ECF 1-1, PageId.77.) The Hearing Officer questioned the SCC's determination with regard to the illegitimacy of Plaintiff's reports of threats and Plaintiff's supposed history of manipulation.  The charge was not dismissed for those reasons though.  It was dismissed because Plaintiff's claims challenging the statements of Defendant Miniard could not be assessed without further investigation.  Because

---

[2]The attachments to Plaintiff's complaint include many narrative descriptions of events from 2011 to 2014. Plaintiff's acknowledgment that no harm accrued to him at Oaks because of the MDOC OTIS information does not mean that no harm accrued to him at all.  Indeed, in the attachments, Plaintiff links multiple violent attacks that he suffered while incarcerated at other MDOC prisons to the MDOC OTIS information.

completion of that investigation would render further proceedings untimely, by decision dated August 27, 2013, the Hearing Officer dismissed the charge. Plaintiff was released from segregation and returned to his secured housing unit the same day.

Three days later, on August 30, 2013, Plaintiff was sent back to administrative segregation on a Notice of Intent. That Notice was premised on a claim that Plaintiff was unmanageable in specialized housing. The hearings division upheld the Notice of Intent on September 12, 2013. The decision was based on a finding that the SCC's previous determinations were true, including that "Beeman's allegations against Turner, Triplett and another prisoner are unfounded . . . 'there is no legitimacy to prisoner Beemer's [sic] complaints.'" (ECF No. 1-2, PageID.118.) Based on those findings, the SCC recommended administrative segregation. The Hearing Officer on the Notice of Intent considered the prior resolution of Plaintiff's misconduct. He noted that, because the misconduct was dismissed on procedural grounds, no facts were actually found by that hearing officer. (*Id.*)

Once Plaintiff was classified to administrative segregation, he was subject to periodic reviews of his status. In the reports of those periodic assessments, the reason for his presence in administrative segregation was reported as "prisoner Beeman feels that his life is in danger at IBC and ECF protection units due to him having conflicts with several prisoners at both locations. (Segregation Behavior Review, ECF No. 1-2, PageID.154; see also ECF No. 1-2, PageID.183, PageID.185; ECF No. 1-3, PageID.217.) He was eventually released to secured housing on October 21.[3]

---

[3]It is not difficult to understand Plaintiff's frustration. Over a period of less than twelve weeks, Plaintiff was put in administrative segregation based on his report of threatened violence, removed from administrative segregation because of a determination that his report of threatened violence was not legitimate, had a major misconduct dismissed by a hearing officer who reasoned that there was evidentiary support for his report of threatened violence, was returned to administrative segregation based on a finding that his report of threatened violence was not legitimate, and then kept in administrative segregation because of his report of threatened violence.

Plaintiff filed grievances relating to virtually every aspect of the procedure that brought him to and kept him in administrative segregation the second time.  Plaintiff filed so many grievances that he was eventually placed on modified access to the grievance system.  That did not stop him from raising issues.  He sent many kites within the prison and letters to persons outside the prison complaining of the wrongs he suffered.  The sending of letters, in turn, generated new complaints because he contended one or more of the Defendants insisted on reading his legal mail or unfairly insisted that he submit it for mailing without being sealed.  Each such "wrong" generated more grievances and letters.  Then the alleged mishandling of those grievances prompted Plaintiff to file grievances again.

Plaintiff alleges that his resort to the prison grievance system led to retaliation  by one or more of the Defendants. According to Plaintiff, the retaliation took many forms: unjustly keeping Plaintiff in administrative segregation, harassing statements and name-calling, unjust misconduct tickets, unfair security classification, unjustified scoring with respect to the Prison Rape Elimination Act, denial of program access, disclosure of personal information to other prisoners, falsification of reports, and refusal to return Plaintiff to the general population.

All of these retaliatory acts, according to Plaintiff, operated to the detriment of Plaintiff's mental health.  He sent a flurry of kites seeking mental health assistance.  He contends that the mental health professionals responsible for his care failed to provide him the care he needed. He alleges that the principal deficiency in the care provided was their failure to put a stop to the abuse of Plaintiff by Defendant Miniard, in violation of Plaintiff's rights under the Eighth Amendment.

Determined to seek redress for these wrongs, Plaintiff sought the assistance of the law library/legal writer program at Oaks.  According to Plaintiff, the library and/or the legal writer

failed him in several ways: denied his request for assistance on October 14, 2014; failed to send updated versions of legal items; refused to send books; copied only one page when several were relevant; refused to send the bar journal; refused to carry the Federal Appendix; would not permit more than one hour per week on the electronic law library; and would not permit in-person visits to the law library.

Finally, Plaintiff claims that Defendant the Michigan Legislature violated Plaintiff's First Amendment right of access to the courts and Fourteenth Amendment right of due process by enacting MICH. COMP. LAWS § 600.2963(8) which states: " A prisoner who has failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid." *Id.* Plaintiff contends that because of this section he was precluded from pursuing appeals of administrative decisions on misconduct tickets or notices of intent.

Following his roughly chronological statement of the facts underlying his claims, Plaintiff states his claims separately against each of the eighteen defendants.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff contends that Defendants have violated his right to be free of cruel and unusual punishment guaranteed by the Eighth Amendment, his right to due process before suffering a deprivation of property or liberty guaranteed by the Fourteenth Amendment, and his right to petition the government for redress guaranteed by the First Amendment.

### A.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### 1. Failure to protect

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517,

526-27 (1984).  To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury.  *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). A defendant demonstrates deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."  *Farmer*, 511 U.S. at 837.

a.    The MDOC OTIS posting

With respect to the OTIS posting, plaintiff alleges that Defendant Unknown MDOC Employee, who initially posted the prison gang reference, exposed Plaintiff to a substantial risk of harm.  Plaintiff makes no allegation, however, that Defendant Unknown MDOC Employee was deliberately indifferent: that Defendant Unknown MDOC Employee knew of and disregarded that risk.   Accordingly, Plaintiff has failed to state a claim against Defendant Unknown MDOC Employee for violation of the Eighth Amendment.

Plaintiff also alleges Defendant Miniard exposed Plaintiff to a substantial risk of harm by failing to act when Plaintiff informed him of the MDOC OTIS posting.  Plaintiff alleges that he informed Defendant Miniard of the MDOC OTIS posting on August 15, 2013.  Plaintiff alleges that Defendant Miniard refused to investigate and refused to remove the information.  Within a week of informing Defendant Miniard, the OTIS posting problem had been corrected.  Even if one can construe Plaintiff's allegations as sufficient with regard to Defendant Miniard's awareness of a substantial risk to Plaintiff's safety, the allegations are insufficient with respect to his disregard of that risk.  *See Ruiz-Bueno v. Scott*, Nos. 14-4149, 14-4151, 2016 WL 385294 at *7 (6th Cir., February 2, 2016) ("Deliberate indifference requires evidence that the official being sued not only perceived facts from which to infer substantial risk, but "did in fact draw the inference and . . . then

-10-

disregarded that risk.'"). The entire time at issue, August 15 to 23, 2013, Plaintiff was housed in the protective confines of administrative segregation. That is the highest level of protection that Plaintiff could enjoy.

b. The threats from Whitney's "cronies"

In Plaintiff's complaint and attachments, Plaintiff sometimes attributes the animus from Whitney and his cronies to the MDOC OTIS posting and sometimes to Whitney's discovery of Plaintiff's role in a Whitney misconduct hearing. The source could be either or both; however, to the extent Plaintiff raises a separate "risk of harm" claim relating to the Whitney cronies' threats, it is also properly dismissed.

Although Plaintiff alleges that he faced the prospect of being returned to the unit and wing that would expose him to the risk of harm, it never actually happened. He remained in administrative segregation from August 10 to October 21 except for a three-day window (August 27 to August 30). During that period, he was returned to unit 1 on a different wing that did not expose him to the risk.

Plaintiff's complaint makes only two other allegations with respect to his exposure to that risk of harm. The first occurred at the end of December, 2013 when prisoner Triplett was returned to Plaintiff's unit. Plaintiff brought the risk to the attention of Defendant Thomas. But Plaintiff does not allege that Thomas was deliberately indifferent to the risk. Plaintiff further states that he informed the Security Classification Committee that Triplett had returned to the unit. Neither Plaintiff's complaint nor the attached documents indicate deliberate indifference to any risk. To the contrary, the complaint and documents disclose that the issue was investigated and that it was determined that the risk was simply no longer present. That determination appears to be borne out

-11-

by prisoner Triplett's conduct as neither Plaintiff's allegations nor his many attached documents make any reference to any risk, incident, or contact thereafter.

Apparently, prisoner Triplett did not stay in the same unit as Plaintiff because Plaintiff alleges that prisoner Triplett returned to Plaintiff's unit again, this time on the same wing, just a few cells down the hall. Plaintiff alleges he raised the issue with six different MDOC employees the first day. Only one of the six, Defendant Thomas, is named in this suit. Plaintiff makes no further allegation with respect to the risk, any incident, or any contact between prisoner Triplett and Plaintiff. Plaintiff also makes no allegation that Defendant Thomas was deliberately indifferent to any risk of harm posed by prisoner Triplett. Put differently, Plaintiff has failed to state a claim for a violation of the Eighth Amendment with respect to any Defendant's deliberate indifference to a substantial risk of harm posed by prisoner Whitney's cronies.

### 2. Administrative Segregation

Plaintiff at times complains that release from administrative segregation might constitute a violation of the Eighth Amendment. At other times he complains that being housed in administrative segregation violated his constitutional rights. To the extent Plaintiff contends that being housed in administrative segregation is a violation of his Eighth Amendment rights, he has failed to state a claim.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs

were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### 3. Verbal abuse and harassment

Plaintiff alleges that Defendant Miniard subjected Plaintiff to repeated verbal abuse. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff

fails to state an Eighth Amendment claim against Defendant Miniard arising from his alleged verbal abuse.

Some of the statements Plaintiff alleges that Defendant Miniard made might stray beyond simple verbal abuse into the area of sexual harassment. Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth

Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

If true, Defendant Miniard's statements toward Plaintiff were reprehensible, but they do not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Miniard ever touched him or had any form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Therefore, Plaintiff's allegations with regard to sexual harassment fail to state an Eighth Amendment claim against Defendant Miniard.

### 4. Inadequate medical care

The Eighth Amendment obligates prison authorities to provide medical care, including medically necessary mental health treatment, to incarcerated individuals, as a failure to

provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care, like any other Eighth Amendment claim, has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

With respect to Defendants Dr. Davenport, Psych Unit Chief Unknown Majerczyk, and Psych Unknown Marshall, mental health professionals at the prison, Plaintiff contends they violated his Eighth Amendment rights by failing to stop the verbal abuse and sexual harassment by Defendant Miniard. With respect to Defendant Dr. Davenport, Plaintiff adds that she discontinued Plaintiff's necessary psych meds when Plaintiff entered administrative segregation in August of 2013.

-16-

a. Discontinuation of psych meds

Plaintiff's allegations in the complaint and the documents he has attached to the complaint include frequent references to his diagnoses of serious mental illness. Moreover, Plaintiff alleges that he informed Dr. Davenport of his diagnoses and prior course of treatment; yet, according to Plaintiff, she discontinued his psych meds after only a brief consultation. Plaintiff's allegations suffice to state a claim against Defendant Dr. Davenport with respect to the discontinuation of psych meds.

b. Failure to stop Defendant Miniard's abuse

As set forth above, Plaintiff's allegations against Defendant Miniard with respect to "abuse" do not suffice to state a claim for violation of Plaintiff's Eighth Amendment rights. Even if they did, however, the failure of Defendants Davenport, Majerczyk, and Marshall to stop such abuse would not state a claim under § 1983. A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of vicarious liability. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Street*, 102 F.3d at 818 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

B. Fourteenth Amendment

Plaintiff claims that virtually every Defendant has violated his right to due process under the Fourteenth Amendment. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal

procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Plaintiff fails to state a claim for violation of his due process rights because he fails to identify a protected liberty or property interest.

Plaintiff's allegations with regard to due process are sweeping in scope. He contends that his due process rights have been violated by the failure of one or more defendants to abide by MDOC rules or regulations with regard to hearings or grievances. He argues that he was denied the process he was due with respect to placement in administrative segregation, his security classification, his Prison Rape Elimination Act scoring, his participation in a reentry program, Class II and Class III misconducts, and grievance resolutions. Not one of the interests alleged by Plaintiff is entitled to due process protection.

## 1.      Failure to comply with MDOC procedures

To the extent Plaintiff contends Defendants have deprived him of due process because they failed to follow state law or MDOC regulatory requirements with respect to minor misconducts or grievances, he has failed to state a claim. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002);

*Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim,* 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

There is similarly no constitutionally protected due process right with respect to misconduct proceedings or convictions. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from the misconduct proceedings in November and December, 2013.

2.      Administrative segregation

The difference between standard prison housing and administrative segregation certainly represents some change in the nature of a prisoner's liberty. But, the Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin,* 515 U.S. at 484, the Court set forth the standard for determining when a prisoner's loss of

liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph,* 410 F. App'x at 868 (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir.1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf.* *Selby v. Caruso*, 734 F.3d 554, 559

(6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Here, Plaintiff was placed in administrative segregation on two occasions.  His first placement was for seventeen days.  His second placement was for fifty-one days.  Whether Plaintiff's stays are considered separately or together, being housed in administrative segregation for a total of sixty-eight days is not a sufficiently atypical and significant hardship to require the protections of due process.

### 3.    Security classification

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges.  *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (same).  Because plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

### 4.    Program Eligibility

Plaintiff contends that the actions of Defendants have impacted his program eligibility, specifically eligibility for a faith-based reentry program.  Plaintiff does not have a

federally cognizable liberty or property interest in participating in state-created rehabilitative programs. Federal courts consistently have found that prisoners have no constitutionally protected interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody*, 429 U.S. at 88 n. 9 (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (no liberty or property interest in a rehabilitative program); *Sykes v. Carl Perkins Rehabilitation Ctr.*, No. 96-5837, 1997 WL 572893, at *1 (6th Cir. Sept. 1, 1997) (no liberty or property interest in federally funded prisoner rehabilitation program); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey*, 832 F.2d at 955 ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb.10, 1998) (no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) ("[N]o constitutional right to vocational or educational programs"). Under these authorities, Plaintiff has no due process claim arising from the denial of rehabilitative program eligibility.

5.      Prison Rape Elimination Act[4] scoring

Plaintiff alleges that he has been evaluated, as required by the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq.*, and designated an aggressor. Plaintiff contends he

---

[4]Plaintiff has no independent cause of action for any Defendant's failure to comply with the Prison Rape Elimination Act. *See Montgomery v. Harper*, No. 5:14-CV-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff.").

should be afforded due process protections before being designated an "aggressor" because the designation impacts his security classification and program eligibility. The Sixth Circuit has specifically held that a prisoner does not have a liberty interest arising from designation as a homosexual predator. *See Washington v. Wiest,* No. 97-1289, 1998 WL 466555, at * 2 (6th Cir. July 31, 1998); *O'Quinn*, 1993 WL 80292, at *1. Such a designation is nothing more than a security classification used by the prison. The same is true of Plaintiff's designation as an "aggressor." Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim with regard to his designation as an "aggressor."

C.     First Amendment

Plaintiff raises five claims that implicate his rights under the First Amendment.

1.     Legal mail

First, Plaintiff contends that Defendant Bengelink's treatment of Plaintiff's outgoing legal mail violates the MDOC's policy and his First Amendment right of access to the courts. Because Plaintiff was indigent, pursuant to MDOC policy, he received ten first class stamps per month. Once he had exhausted that benefit, he was entitled to MDOC loans to obtain additional postage, but only for his "legal mail." To ensure that Plaintiff was entitled to the postage loan for a particular piece of mail, Plaintiff was required to submit the mail, unsealed, for inspection. Once a cursory examination by a prison official revealed that it was "legal mail" and that Plaintiff was, therefore, entitled to the postage loan, Plaintiff contends the prison official was to seal the mail in Plaintiff's presence (or permit Plaintiff to seal the mail) before taking it for mailing.

Plaintiff alleges that during October and November of 2013, on several occasions, he submitted "legal mail" to Defendant Bengelink. Rather than inspecting and sealing (or permitting Plaintiff to seal) the mail, Defendant Bengelink simply left Plaintiff's presence with the mail

unsealed. Plaintiff alleges that Defendant Bengelink used that opportunity to read his legal mail and then disclose the information contained therein to other prison personnel including Defendants Miniard and Thomas.

The Sixth Circuit has considered and upheld the constitutionality of the MDOC's "legal mail" inspection policy. *See Bell-Bey v. Williams*, 87 F.3d 832 (6th Cir. 1996). But elements of the policy that influenced the *Bell-Bey* court's decision included the safeguards that "the inspection is conducted in the prisoner's presence in his cell; and . . . the prisoner may seal his mail after the inspection is completed." *Id.* at 837. The *Bell-Bey* court indicated that absent such safeguards "prison officials would have unbridled discretion to 'review' a prisoner's mail," a circumstance the Sixth Circuit found unconstitutional in *Bout v. Abramajtys*, 28 F.3d 1213, 1994 WL 329219 (6th Cir. 1994). Accordingly, Plaintiff's First Amendment claim against Defendant Bengelink relating to his legal mail states a claim sufficient to warrant service.

### 2. Retaliation

In his second First Amendment claim Plaintiff alleges that several defendants retaliated against him for filing grievances. The retaliation took many forms. Every instance of misconduct Plaintiff alleges as violative of the Eighth Amendment or Fourteenth Amendment is also offered in support of his First Amendment claim as retaliatory. The principal retaliatory act, however, was keeping Plaintiff in administrative segregation without justification. Plaintiff alleges that Defendants T. Ball, Unknown Miniard, Unknown Thomas, and Unknown Bengelink informed him that he could get out of administrative segregation if he just stopped filing or pursuing grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order

to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). "[The Sixth Circuit] has held that restricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010); *see also Thaddeus-X*, 175 F.3d at 396 ("[A]n action comparable to transfer to administrative segregation would certainly be adverse."). The threats that Plaintiff has alleged by Defendants T. Ball, Unknown Miniard, Unknown Thomas, and Unknown Bengelink are sufficient to demonstrate a causal connection between the adverse action and the protected conduct.

A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith*, 250 F.3d at 1038; *Shehee*, 199 F.3d at 301. The Segregation Behavior Review Reports indicate that Defendants T. Ball, Unknown Miniard, Unknown Thomas, and Unknown Bengelink each played a role in keeping Plaintiff in administrative segregation. ( ECF 1-2, PageID.154, 183, 185; ECF 1-3, PageID.217).[5] Therefore

---

[5] Neither the documents submitted by Plaintiff nor his allegations suffice to state the same "decisionmaker" status for Defendant Sgt. Unknown Mackay for the administrative segregation retaliation claim.

Plaintiff has stated a First Amendment retaliation claim against Defendants T. Ball, Unknown Miniard, Unknown Thomas, and Unknown Bengelink.

Plaintiff also contends that Defendant Sgt. Unknown Mackay retaliated against him in connection with a minor misconduct that resulted initially in a twenty-day loss of privileges. Plaintiff succeeded in overturning that sanction because the twenty-day penalty exceeded the ten-day penalty he was initially offered. Plaintiff's allegations against Defendant Sgt. Unknown Mackay fail because Sgt. Mackay was not the officer who cited Plaintiff nor was she the hearing officer who imposed the twenty-day loss of privileges. To the extent a twenty-day loss of privileges constituted an "adverse action," Defendant Mackay was not the decisionmaker who took the action against Plaintiff. Thus Plaintiff has failed to state a First Amendment retaliation claim against Defendant Unknown Mackay with respect to the minor misconduct.

### 3.   Modified Access

In this final First Amendment claim Plaintiff suggests that his placement on modified access to the prison grievance system might also constitute actionable retaliation. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker*, 128 F. App'x at 446. Accordingly, Plaintiff has failed to state a retaliation claim with respect to being placed on modified access.

### 4.   Denial of Plaintiff's right to pursue appeals of misconduct tickets and notice of intent hearings in the state courts under MICH. COMP. LAWS § 600.2963(8)

Plaintiff alleges that he has been denied (or he might be denied) the opportunity to pursue appeals of his misconduct tickets and notice of intent hearings in the state court under MICH. COMP. LAWS § 600.2963. That statutory section permits indigent prisoners to file civil actions and

appeals without immediately paying the entire filing fee, and it also provides: "(8) A prisoner who has failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid." *Id.* Plaintiff alleges that he still owes fees and costs for a lawsuit he filed against the MDOC in the Ingham County Circuit Court. Thus, Plaintiff contends, the statute denies him his constitutional right of access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). That right, however, is not without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals [of the prisoner's conviction and/or sentence], habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Because Plaintiff does not allege interference with his access to the courts for those purposes, he has failed to state a claim.

5.   Plaintiff has failed to show any actual injury resulting from the actions or inactions of Defendant legal writer/law librarian.

Plaintiff cannot base a claim for denial of access to the courts on the conduct of the legal writer/law librarian because he has failed to demonstrate any actual injury. As stated above,

to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey*, 168 F.3d at 886; *Knop*, 977 F.2d at 1000.  The Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.

Here, Plaintiff alleges that the underlying cause of action is the instant civil rights lawsuit.  Identifying the underlying cause is not sufficient.   An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Plaintiff has failed to show any such prejudice here.  He was able to file a complaint. He has not missed any court-imposed deadlines.  He has raised claims that will survive initial screening.  Although some of Plaintiff's claims will be dismissed, they are dismissed because they are meritless, not because Defendant legal writer/law librarian failed to provide Plaintiff constitutionally required litigation support.   Accordingly, Plaintiff has failed to state a First Amendment claim for denial of access to the courts against Defendant legal writer/law librarian.

D.      Respondeat Superior

Plaintiff's complaint is replete with allegations that one Defendant is liable for the actions of another Defendant.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495.  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee*, 199 F.3d at 300.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Accordingly, to the extent Plaintiff seeks to impose vicarious liability against any of these Defendants, he has failed to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Daniel Heyns, (unknown) Deputy Director, Michael W. Curley, Richard Russell, (unknown) MDOC employee, Cindy Curtin, (unknown) Sharp, T. Bassett, Sgt. (unknown) Mackay, (unknown) Majerczyk, (unknown) Marshall, the Michigan Legislature, and (unknown) legal writer/law librarian will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants T. Ball, (unknown) Thomas, and (unknown) Miniard, with respect to the retaliation claim only, Defendant (unknown) Bengelink, with respect to the retaliation claim and the claim for

failing to seal Plaintiff's legal mail in Plaintiff's presence, and Dr. Davenport, with respect to the

claim that Defendant Davenport cancelled Plaintiff's "psych meds" in August of 2013.

       An Order consistent with this Opinion will be entered.


Dated:  April 5, 2016                      _____/s/ Gordon J. Quist_____
                                        GORDON J. QUIST
                            UNITED STATES DISTRICT JUDGE